(99 App. Div. 186)

### HOOKE v. FINANCIER CO.

(Supreme Court, Appellate Division, First Department. December 9, 1904.)

1. CORPORATIONS—EMPLOYÉS—COMPENSATION—LIABILITY—ESTOPPEL.

Where the employés of a business corporation were paid commissions on business obtained by them, and an officer of the corporation, employed by the president to procure business outside of his duties as officer, was credited by the responsible officers of the corporation with his commissions as business was obtained by him, the corporation was estopped from repudiating liability to pay for the services.

2. SAME—OFFICERS—POWER TO EMPLOY AGENTS.

A by-law of a business corporation gave to the president power to employ and discharge employés of the corporation. The president employed plaintiff, an officer of the corporation, to procure contracts on a commission basis. The services rendered by plaintiff in procuring the contracts were outside of his duties as officer. Held, that plaintiff was entitled to commissions on the business actually obtained by him during the term of his employment.

3. SAME—ACTION ON CONTRACT—EVIDENCE—FINDINGS.

In an action against a corporation to recover commissions for business contracts obtained, plaintiff testified that the president of the corporation, in speaking of the business contracts on which plaintiff was entitled to commissions said that the contracts would run along from year to year, and would pay him a commission on the contracts until they were specifically stopped by the party that made them. Held not to support a finding

that plaintiff should receive commissions on the business contracts which continued after plaintiff left the corporation's employ, but to support a finding that plaintiff was to receive commissions on continuing contracts during his employment which he was influential in continuing.

4. SAME—ACT OF AGENT—EFFECT ON LIABILITY OF CORPORATION.

The fact that a bookkeeper of a corporation credited an employé, after the termination of his employment, with the amount of certain commissions on continuing business contracts originally procured by the employé, does not impose a liability on the corporation for commissions on continuing contracts.

Van Brunt,· P. J., dissenting.

Appeal from Judgment on Report of Referee.

Action by F. Howard Hooke against the Financier Company. From a judgment for plaintiff rendered on the report of a referee, defendant appeals. Modified.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGHLIN, O'BRIEN, and INGRAHAM, JJ.

Theron G. Strong, for appellant.

John J. O'Connell, for respondent.

INGRAHAM, J. The referee found that the defendant was a domestic corporation; that since January, 1895, its affairs were managed by at least four trustees; that during all that period· the plaintiff was one of the trustees, and an officer of the company; that by one of the by-laws of the corporation the president was given power "to employ and discharge any and all employés of the company, except as otherwise provided in these by-laws"; that on or about the 1st day of January, 1895, an agreement was made between the plaintiff and one F. E. Ewing, who was president of the defendant, and also one of the trustees, by which the plaintiff was to be paid a commission of 50 per cent. on business secured by him; that when this contract was made both Ewing and the plaintiff were trustees of the company, and continued to be such trustees down to the termination of the agreement prior to the commencement of this action; that in the month of September, 1895, the plaintiff was paid a salary of $200 a month and expenses, instead of the commissions above stated, and this arrangement continued in force until the 1st of April, 1896, when a new agreement was made as to the plaintiff's compensation, which continued until the 4th of April, 1897; that on that day a new agreement was made, by which the plaintiff was to receive a salary of $50 a week and expenses, which continued until the 1st day of January, 1899, when an arrangement was made by which the agreement of February 1, 1895, was restored so that the plaintiff was to receive 50 per cent. commission on the New York City business and on business outside of New York City, and this agreement continued until the termination of the relations between the plaintiff and the defendant. The referee also found that the services rendered by the plaintiff were outside of his duties as·an officer of the defendant, and that the agreement entered into by the plaintiff and the defendant was a fair and reasonable agreement, and the compensation agreed to be paid the plaintiff was fair and reasonable for the services that he rendered, that by the terms of the agreement in force when the plaintiff was employed by the defendant upon

a commission basis the plaintiff was to receive 50 per cent. commission on all business contracts obtained by him, and also upon all subscriptions and sales of the paper obtained by him for the defendant as long as such contracts which were obtained by the plaintiff continued, provided that a commission on old business was to be received by the plaintiff only where such old customers had dropped out and plaintiff had obtained a new contract from them.

Turning to the testimony, it appears that Ewing, the president of the company, was its active manager during the period that the plaintiff was an employé or officer of the company. The plaintiff testified that in 1895 Ewing said to the plaintiff: "Mr. Hooke, you don't want to leave me. You can make $15,000 a year by working on commission, just the same as I do. You travel all around the country and pay your own expenses, and I will give you 50 per cent. of all the advertisements you can get;" to which the plaintiff replied, "All right, Mr. Ewing, I will do that." "Ewing said: 'Now, Mr. Hooke, you don't want to leave me. You can go out on a commission basis, and get advertisements the same as I do. You can make contracts with banks, and make contracts right along, like Tennyson's brook, that runs on and on forever. These contracts will run right straight along from year to year, and we will pay you 50 per cent. commission on the contracts until they are specifically stopped by the bank that made them. You can make $15,-000 a year easy. You will get a certain amount of business the first year on which you will get 50 per cent. In the second year some of this business will drop out, but what is continued you will get 50 per cent. commission on just the same as if it was a new and original contract you made with them another year, and you will get 50 per cent. commission on all contracts you made during that year, and so on ad infinitum. * * *' He said I would get 50 per cent. on all subscriptions as well as advertising; on any money I should bring into the company at all, or should be instrumental in bringing in, I would get 50 per cent. on it all, the same as he took." The plaintiff having rested, the defendant moved to dismiss the complaint, upon the grounds, first, that Ewing had no authority to make such a contract, and, second, that, the plaintiff and Ewing being officers and trustees of the company, the alleged contract was not a valid or legal obligation of the defendant. This motion was denied, and the defendant excepted. On behalf of the defendant there was evidence that during the time that this arrangement between the plaintiff and the defendant was in force the plaintiff was credited with various amounts on the books of the company for commissions on business that he obtained by the direction of Ewing, the president; that Ewing and several other solicitors or agents of the company received commission upon advertising business obtained by them, and that the payment of such commission was the general method adopted by the defendant to pay its employés for business obtained for it. Ewing, the president, testified that the usual commission that was paid was 25 per cent., and that he gave the plaintiff double what anybody else received; that where contracts were made for a year, and then continued, it was the custom of the business to give to the person who obtained the original contract his commission for the following years during which the contract was continued; that upon these

continuous contracts from year to year, after being first obtained by the plaintiff, he was credited with a commission from year to year; that his agreement with the plaintiff was that the plaintiff was to receive 50 per cent. when he was on the road and 40 per cent. on the business obtained in the city. During the most of the time that this contract was in force, and at the time the last contract was alleged to have been made, there were five directors, consisting of Ewing, the president, the plaintiff, C. A. Hazen, F. E. Ewing and J. E. Ewing, who were respectively the daughter and sister of the president. The minutes of the meeting of the stockholders and directors were introduced in evidence; but it did not appear that F. E. Ewing or J. E. Ewing was ever present at any meeting of the board of directors, or had any knowledge or control of the conduct of the business of the company.

Considering the business of this company, the fact that all of its agents or employés were paid commissions upon the advertisements that they obtained, and that the plaintiff worked for years under such an agreement, being credited by the responsible officers of the company with his commissions as the business obtained, the defendant is certainly estopped from repudiating liability to pay for the services rendered by the plaintiff. In business corporations of this character the power of officers to make contracts in relation to its business is necessarily much broader than that of other corporations who are not organized for the conduct of a going business; and by the provisions of the by-laws mentioned the president of the company is expressly authorized to employ and discharge any and all employés of the company. He was thus authorized to employ the plaintiff, and to fix the compensation that he was to receive. He admits that he employed the plaintiff to solicit business for the benefit of the company, for which the plaintiff was to receive 50 per cent. of the amount received for advertisements obtained outside of the city of New York, and 40 per cent. of the amount received for advertisements obtained by the plaintiff in the city of New York; and, the plaintiff having performed the services under this employment, he was entitled to recover these commissions upon the business actually obtained by him during the time that he was in the employ of the company.

The plaintiff also claims, and has been allowed by the referee, a commission upon advertisements which he had obtained, and which were continued after he left the employ of the company. I do not think that it can be said that such an agreement, by which the plaintiff was to receive 50 per cent. upon all advertising contracts obtained by him and subscriptions and sales of papers obtained by him so long as such advertisement on subscriptions continued, was proved. That finding is based upon the testimony of the plaintiff that the president of the defendant said in speaking of the contracts upon which the plaintiff was to be entitled to commissions, that these contracts would run right straight along from year to year, and they would pay him 50 per cent. commissions on the contracts until they are specifically stopped by the bank that made them. There is nothing in this to indicate an intention by the president to bind the company to pay to the plaintiff 50 per cent. on all of the advertisements and subscriptions which were continued

after the plaintiff had left the employ of the defendant. The right of the officers to bind the corporation to pay a percentage of its business for all time to an employé is, to say the least, extremely doubtful; and certainly such a contract should not be inferred when the language used is consistent with an intention to compensate an employé for the services that he rendered while remaining in the employ of the company. The referee, in the eighth finding, expressly found that a commission on old business was to be received by the plaintiff only where such old customers had dropped out and plaintiff had obtained a new contract. I think that a fair construction of the testimony sustained this finding, and that the plaintiff was to receive commissions upon these continuing contracts while he remained in the employ of the company and was influential in obtaining their continuance, and that when that employment was terminated his right to commissions upon the continuance of the advertisements that he had obtained ceased. The fact that some bookkeeper of the defendant credited the plaintiff with an amount of commissions after January 17, 1900, when the plaintiff's relation to the company ceased, without the knowledge of the officers of the company, would not impose a liability upon the company; and, as the referee has allowed the sum of $939.83 for such commissions, I think that that sum should be deducted from the amount awarded to the plaintiff.

The judgment appealed from should therefore be modified by deducting the amount of $939.83 and interest thereon to the entry judgment, and, as thus modified, the judgment should be affirmed, without costs.

O'BRIEN, McLAUGHLIN, and HATCH, JJ., concur.

VAN BRUNT, P. J.   I dissent.   The judgment should be reversed.